IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES G. HOLMES,
    Plaintiff,

vs.                                      Case No.: 3:15cv557/RV/EMT

LAW LIBRARIAN STRAIN, et al.,
    Defendants.
_____/

## **AMENDED REPORT AND RECOMMENDATION**[1]

Plaintiff James G. Holmes ("Holmes"), proceeding pro se and in forma pauperis, commenced this action on December 13, 2015, by filing a civil rights complaint, under 42 U.S.C. § 1983 (ECF No. 1).  The matter is now before the court on Holmes' Amended Complaint and motion for injunctive relief (ECF Nos. 25, 30).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P.

---

[1] This Amended Report and Recommendation is issued only to acknowledge the filing of Holmes' motion for injunctive relief (ECF No. 30), and to recommend that the motion be denied as moot, in light of the court's conclusion that Holmes' access-to-courts claims are subject to dismissal with prejudice for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The court received Holmes' motion for injunctive relief after the initial Report and Recommendation was issued.

72(b). After careful consideration of the issues raised by Holmes, it is the opinion of the undersigned that this case should be dismissed.

I.	HOLMES' ALLEGATIONS

Holmes is an inmate of the Florida Department of Corrections ("FDOC"), housed at Santa Rosa Correctional Institution ("SRCI"). He names the following persons as Defendants: (1) W.J. Strain, a law librarian at SRCI; (2) L. Frame, a law librarian at SRCI; (3) Dean Peterson, Library Administrator at SRCI; (4) Jimmy Coker, Warden of SRCI; (5) Sam Culpepper, Regional Director for Region 1 of the FDOC; (6) Julie Jones, Secretary of the FDOC; (7) Pamela Bondi, Attorney General of the State of Florida; and (8) Rick Scott, Governor of the State of Florida (ECF No. 25 at 1–3, 5–8).[2]

Holmes alleges he arrived at SRCI on August 26, 2015 (ECF No. 25 at 22). He alleges Law Librarian Strain deprived him of all legal supplies, including pens, paper, and envelopes, from that date to November 24, 2015 (*id.* at 13). Holmes also alleges Strain deprived him of access to the law library, including legal materials and persons with legal training, during that period (*id.*). Holmes alleges Law Librarian Strain and Library Administrator Peterson failed to provide a complete and updated version of

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Holmes may have assigned.

Chapter 33 of the Florida Administrative Code (*id.* at 13, 17). Holmes alleges that pursuant to the policies of Law Librarian Frame, inmates in Close Management were permitted to receive photocopies of case law, but inmates in open population, such as himself, were required to copy case law by hand (*id.* at 15). Holmes also alleges that Close Management inmates were provided typing services from inmate "law clerks" for their legal filings, but inmates in open population were not provided typing services (*id.* at 14). Holmes alleges that inmates in the SRCI Work Camp are permitted access to the law library only once per week for one hour, and that only ten inmates may attend (*id.* at 15, 23).

Holmes alleges that the aforementioned deprivations during that three-month time period affected four legal actions he was attempting to pursue: (1) a request to the state sentencing court for assistance in recovering his vehicle, which he had parked at the courthouse on the date he was sentenced, and personal property contained in the vehicle; (2) a direct appeal of his conviction; (3) a federal civil rights action for damages he suffered as a result of slipping and falling in the SRCI kitchen; and (4) a federal civil rights action concerning the FDOC's requiring him to participate in an intensive outpatient substance abuse program for three hours per day for a four-to-six-month period beginning on November 8, 2015 (ECF No. 25 at 13–15).

Holmes claims that the failure of Law Librarian Strain, Law Librarian Frame, and Library Administrator Peterson to provide adequate access to legal supplies, legal materials, and services of the law library violated his First Amendment right to access the courts (*see* ECF No. 25 at 29; ECF No. 25-1 at 1–6). He also claims that their conduct violated his rights to due process, equal protection, assistance of counsel, and freedom from cruel and unusual punishment under the Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments (*id.*). Holmes seeks to hold Warden Coker, Regional Director Culpepper, Secretary Jones, Attorney General Bondi, and Governor Scott liable for the constitutional violations, because they are responsible for supervising Defendants Strain, Frame, and Peterson (ECF No. 25-1 at 1). Holmes seeks declaratory and injunctive relief, as well as compensatory and punitive damages (ECF No. 25 at 29; ECF No. 25-1 at 7).

II.   ANALYSIS

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations must

establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alteration omitted); *see also* Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013). Stated succinctly, pleadings that are no more than conclusions, are not entitled to the assumption of truth. *See* Iqbal, 556 U.S. at 679. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

    A.    <u>Access-to-Courts Claims</u>

It is settled law that interference with an inmate's access to the courts is a violation of a First Amendment right actionable under section 1983. *See* Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991). However, as established in <u>Lewis</u>, to successfully allege a constitutional violation based upon a denial of access to courts, Holmes must specifically show how he was actually harmed or prejudiced with respect to the litigation in which he was involved. 518 U.S. at 349. The type of prejudice that is

deficient in the constitutional sense is that which hinders the inmate's ability to actually proceed with his claim; there is no constitutional mandate "to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court." *Id.* at 354. Importantly, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* Holmes must show that he was prejudiced in a criminal appeal or post-conviction matter, or in a civil rights action seeking "to vindicate 'basic constitutional rights.'" *Id.* at 354–55 (quoting Wolff v. McDonnell, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)).

Furthermore, Holmes must allege actual injury "such as a denial or dismissal" and show that presentation of his case was impeded because of the defendant's actions. Wilson v. Blankenship, 163 F.3d 1284, 1290–91 (11th Cir. 1998) (citing Lewis); *see also* Bass v. Singletary, 143 F.3d 1442, 1445–46 (11th Cir. 1998). So long as Holmes was able to litigate his claim, he cannot demonstrate that he was unconstitutionally denied access to the courts. Wilson, 163 F.3d at 1291. Moreover, Holmes cannot show an injury unless he shows that the case he was unable to pursue had arguable merit. Lewis, 581 U.S. at 353 n.3; Wilson, *supra*.

Holmes cannot show he suffered prejudice, in the constitutional sense, as to any legal claim he alleges he was pursuing at the time Defendants allegedly denied him

access to legal supplies, materials, and services.  The undersigned will explain why as to each of Holmes' legal claims.

### 1. Legal claim concerning vehicle and personal property

Holmes alleges that in August of 2015, he sought to contact the state sentencing court regarding the disposition of his vehicle, which he left in the parking lot of the state courthouse on the day he was sentenced, July 28, 2015 (ECF No. 25 at 21–22). Holmes alleges he was transferred from the Volusia County Jail to the FDOC Reception Center on August 6, 2015, and was told (by unidentified officials) that he must wait to receive any indigent legal supplies (free paper and envelopes) until he was transferred to his permanent housing institution (*id.*).  Holmes alleges that upon his arrival at SRCI on August 26, 2015, he was told that indigent envelopes would be passed out on the first day of September, but they were not (*id.* at 23).  Holmes alleges that on September 1, 2015, he requested a pass to attend the law library, and was told to "line up" later for passes (*id.*).  Holmes alleges law library passes were never provided that day (*id.*).  He alleges that on September 7, 2015, he submitted a request to the law library for legal supplies; but on September 14, 2015, he received a response directing him to sign up to attend the law library to receive supplies (*id.*). Holmes alleges he wrote a new request to the law library, "declining" a trip to the law library and requesting that pens, paper, and envelopes be provided to him; but on

September 21, 2015 (a Monday), he received a response advising him that the only way he would receive indigent supplies was if he attended the law library (*id.*). Holmes alleges he submitted a new request to attend the law library, but he was not permitted to attend the following Friday (September 25, 2015) (*id.*). Holmes alleges only ten inmates were permitted library access each Friday, and he was not one of the inmates chosen on September 25, 2015 (*id.*). Holmes alleges he was not permitted to attend the law library until November 25, 2015 (*id.* at 25).

Despite Holmes' inability to attend the law library, he was apparently able to communicate with the Volusia County Court regarding his vehicle. This is evident from Holmes' allegation that on October 14, 2015, he received correspondence from the state court advising him that the court could not assist him regarding his vehicle (ECF No. 25 at 24). Indeed, according to the online public records of the Clerk of Court for Volusia County, Florida, Case No. 2013-CF-301196, the state court received correspondence from Holmes on October 7, 2015, and sent him responsive correspondence on October 14, 2015.[3]

---

[3] The court takes judicial notice of information available on the databases maintained by the clerks of court for the Florida state courts. *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006)

Holmes has not shown that his request for assistance from the state court regarding his vehicle had arguable merit, or that the denial of his request was caused by the conduct of any Defendant. Therefore, Holmes failed to show a constitutional violation with respect to the legal claim concerning his vehicle and the personal property contained therein.

2. Direct appeal

Holmes alleges that on September 1, 2015, the day that prison officials failed to provide law library passes, he intended to contact the state courts regarding appointment of appellate counsel to represent him on direct appeal of his state conviction (ECF No. 25 at 23). Holmes alleges that on October 15, 2015, he was notified that the public defender's office, which had been appointed to represent him on direct appeal, had a conflict of interest in representing him (*id.* at 24). Holmes alleges that on November 19, 2015, and December 2, 2015, he received notifications from the state appellate court regarding appointment of appellate counsel (*id.*). Holmes alleges that on December 7, 2016, he received an order from the state trial court appointing conflict-free counsel to represent him on direct appeal (*id.* at 25).

---

(taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

According to the online public records in Holmes' state criminal case, Case No. 2013-CF-301196, a notice of appeal was filed by counsel for Holmes on July 30, 2015.  On August 7, 2015, the trial court appointed the public defender's office to represent Holmes.  On October 9, 2015, the Florida Fifth District Court of Appeal ("Fifth DCA"), Case No. 5D15-2683, granted the public defender's request to withdraw, and relinquished jurisdiction to the trial court to appoint conflict-free counsel.  On October 13, 2015, the trial court appointed the Office of Criminal Conflict and Civil Regional Conflict Counsel.  The trial court received correspondence from Holmes on October 23, 2015, October 28, 2015, and November 12, 2015.  On November 16, 2015, the trial court received Holmes's "Motion to Compel Criminal Conflict Counsel."  On November 19, 2015, the trial court transferred Holmes' motion to the Fifth DCA.  On December 2, 2015, the Fifth DCA again relinquished jurisdiction to the trial court for appointment of conflict-free counsel.  On December 8, 2015, the trial court appointed conflict-free counsel to represent Holmes.  On December 9, 2015, the trial court received correspondence from Holmes.  On December 10, 2015, the trial court sent responsive correspondence to Holmes.  According to the Fifth DCA's docket, Holmes' counsel filed an <u>Anders</u> brief on April 28, 2016, and Holmes has until August 25, 2016, to file a pro se initial brief.

Holmes cannot show that he suffered prejudice, in the constitutional sense, in his direct appeal as the result of any Defendant's conduct.  Therefore, he failed to state a plausible First Amendment claim of denial of access to the courts with respect to his direct appeal.

### 3. Civil rights action for damages from slip and fall

Holmes alleges that on September 27, 2015, he slipped and fell in the SRCI kitchen, causing injury to his right hip and elbow (ECF No. 25 at 24).  He alleges that prior to his fall, he complained to "security management" and other inmates about the wet conditions of the kitchen floor and the poor quality of footwear that inmates were required to wear, but he was simply advised to post "slippery when wet" signs (*id.* at 14, 23–24).  Holmes alleges he fell in the kitchen a second time on October 20, 2015, causing a severe bruise on his stomach, and he fell again on December 30, 2015, injuring his right hip and arm (*id.* at 24, 26).  Holmes alleges that denial of access to legal supplies and the law library until November 25, 2015, rendered him unable to access the courts to file a federal civil rights action regarding the conditions in the kitchen (*id.* at 15, 24).

Holmes does not allege how the two-month delay in access to the law library and legal supplies prevented him from filing a civil rights action concerning the conditions in the kitchen.  The applicable statute of limitations for a § 1983 action

filed in Florida is four (4) years. *See* Baker v. Gulf & W. Indus., 850 F.2d 1480, 1481 (11th Cir. 1988); Grace v. Wainwright, 761 F. Supp. 1520 (M.D. Fla. 1991); *see* Fla. Stat. § 95.11(3) (1991). Therefore, Holmes has plenty of time to pursue a § 1983 action.

Additionally, courts have regularly held that slip and fall accidents do not give rise to federal causes of action; therefore, Holmes failed to show that a § 1983 claim had arguable merit. *See, e.g.*, Reynolds v. Powell, 370 F.3d 1028, 1031 (10th Cir. 2004) (slippery condition arising from standing water in prison shower was not a condition posing a substantial risk of serious harm as required under the Eighth Amendment, even where inmate was on crutches and had warned prison employees that he was at heightened risk of falling; concluding "slippery floors constitute a daily risk faced by members of the public at large."); Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) ("an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety"); Marsh v. Jones, 53 F.3d 707, 711–12 (5th Cir. 1995) (inmate's claim for monetary damages resulting from defendants' failure to warn that a leaking or sweating air conditioning unit made the floor wet was "a garden-variety negligence claim that was not actionable under § 1983"); LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment."); Robinson v Cuyler, 511

F. Supp. 161, 162–63 (E.D. Pa. 1981) (dismissing prisoner's Eighth Amendment claim against prison officials for allegedly hazardous working conditions in prison kitchen caused by slick floor (resulting in prisoner sustaining serious injury when he slipped, fell, and was burned by hot food from overturned pot); concluding that a slippery floor does not inflict cruel and unusual punishment in violation of the Eighth Amendment); Snyder v. Blankenship, 473 F. Supp. 1208 (W.D. Va. 1979), *aff'd mem.*, 618 F.2d 104 (4th Cir. 1980) (dismissing prisoner's Eighth Amendment claim based on prisoner slipping and falling on slick prison kitchen floor caused by leaking dishwasher—even though prisoner offered proof of prison officials' knowledge of hazardous condition and past serious injuries resulting from slips and falls on the floor—prison officials' failure to remedy the situation "cannot be said as a matter of federal law to be conduct shocking to the conscience or repugnant to civilized standards of a maturing society"); *see also* Harris v. Stalder, 261 F. App'x 658 (5th Cir. 2008) (prisoner's attempt to hold prison officials liable for physical injuries sustained when prisoner slipped and fell on wet prison kitchen floor failed to allege a viable deliberate indifference claim) (unpublished); Beasley v. Anderson, 67 F. App'x 242 (5th Cir. 2003) (prisoner's claim that he slipped and fell on slippery shower floor sounded in negligence and was insufficient to allege a constitutional violation) (unpublished); Lefall v. Johnson, 48 F. App'x 104 (5th Cir. 2002)

(prisoner's claim that he suffered a back injury after slipping and falling on a wet floor caused by persistent plumbing leaks of which defendants were aware was, at most, a claim of negligence which is not actionable under § 1983) (unpublished); Gaskin v. Mathews, No. 5:10cv44/MCR/CJK, 2012 WL 174933 (N.D. Fla. Jan 20, 2012) (prisoner's claim that he slipped and fell on slippery kitchen floor due to prison officials' failure to provide rubber mats was insufficient to state plausible Eighth Amendment claim) (unpublished); Brown v. Thorton, 3;09cv396/RV/MD, 2010 WL 942085 (N.D. Fla. Mar. 1, 2010), *Report and Recommendation Adopted by* 2010 WL 941161 (N.D. Fla. Mar. 12, 2010) (plaintiff's allegations that he slipped and fell due to water on the floor from clogged sink, and that defendant prison official knew of the water on floor, were insufficient to state plausible Eighth Amendment claim) (unpublished); Davis v. Corr. Corp. of Am., No. 5:07cv279/RS/EMT, 2008 WL 539057 (N.D. Fla. Feb. 22, 2008) (plaintiff's allegations that he slipped and fell due to water on the floor from a leaking toilet resulting in injury to his leg failed to state an Eighth Amendment violation) (unpublished); Gates v. Jolley, No. 4:06cv50(CDL), 2007 WL 106533, at *2, 5 (M.D. Ga. Jan 8, 2007) (prisoner's allegations that he slipped in water that accumulated on floor of jail due to leak in roof, causing him to suffer back pain, failed to state Eighth Amendment claim; defendants' awareness of leak and failure to repair it was not more than mere negligence) (unpublished).

Case No.: 3:15cv557/RV/EMT

Holmes failed to show that presentation of his § 1983 action was impeded because of any Defendant's actions, or that his civil rights case had arguable merit. Therefore, he failed to state a First Amendment violation with respect to this claim.

### 4. Civil rights action concerning participation in substance abuse program

Holmes alleges that on November 8, 2015, he was "arbitrarily" placed into an intensive outpatient substance abuse program, in addition to his work assignment in the kitchen (ECF No. 25 at 14–15, 24). Holmes alleges that denial of access to legal supplies and the law library until November 25, 2015, rendered him unable to access the courts to file a federal civil rights action regarding this unconstitutional condition of his confinement (*id.* at 15, 24).

Holmes does not allege how the two-week delay in access to the law library and legal supplies prevented him from filing a civil rights action concerning the requirement that he participate in the substance abuse program. As previously discussed, the applicable statute of limitations for a § 1983 action filed in Florida is four (4) years. Furthermore, he has failed to show that a constitutional challenge to the requirement that he participate in a substance abuse program had arguable merit. Therefore, he failed to state a plausible First Amendment claim as to this allegedly frustrated legal claim.

Case No.: 3:15cv557/RV/EMT

In short, Holmes has failed to show that the lack of access to legal supplies, legal materials, and services of the law library deprived him of access to the courts in violation of the First Amendment. Therefore, his access-to-courts claims should be dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

B.   Other Claims

In addition to his access-to-courts claims, Holmes alleges facts concerning other alleged constitutional violations. Some of the additional constitutional claims arose after Holmes commenced the instant lawsuit, and are thus unexhausted (as discussed more fully *infra*). Others involve persons who are not named as Defendants, and against whom Holmes asserts claims that must be asserted in a separate lawsuit. For example, Holmes alleges that he received disciplinary reports on March 14, 2016 and March 31, 2016, in retaliation for his filing this civil rights action (ECF No. 25 at 15, 26–28; ECF No. 25-1 at 4). Holmes also alleges that on January 4, 2016, Officer Bishop (who is not named as a Defendant in this case) monitored a telephone call between Holmes and his appellate attorney (ECF No. 25 at 26; ECF No. 25-1 at 4).

Additionally, Holmes alleges that on December 18, 2015, he was deprived of adequate medical treatment with respect to a skin cancer biopsy on his nose (ECF No. 25 at 26; ECF No. 25-1 at 4). Holmes further alleges that Nurse Allen and Nurse Kelly (neither of whom is named as a Defendant) deprived him of glasses, as well as

medical treatment for injuries he received after he fell in the SRCI kitchen (*see* ECF No. 25-1 at 4).  Holmes also alleges he was subjected to "dental torture" when a medical provider "stabbed" him ten times with a needle in the wrong area of his mouth while administering novocaine during a dental procedure (*see id.*).

Holmes cannot join persons as Defendants in one action unless his claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences **and** the claims share a common question of law or fact.  *See* Section 1983 complaint form, Section V; Fed. R. Civ. P. 20.

Additionally, Holmes is statutorily prohibited from pursuing constitutional claims that arose after December 13, 2015, unless and until he exhausts his administrative remedies.  Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Congress enacted this mandatory exhaustion requirement . . . as part of the PLRA's effort to curtail frivolous and abusive prisoner litigation."  Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998).  Because "exhaustion is now a pre-condition to suit," courts lack discretion to waive the exhaustion requirement.  *Id.* at 1325–26.  Thus, when a state provides a grievance procedure for its prisoners, as Florida does

here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure <u>before</u> pursuing a § 1983 lawsuit." <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added).

For these reasons, Holmes' constitutional claims other than his access-to-courts claims, should be dismissed without prejudice.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Plaintiff's First Amendment claims against Defendants regarding denial of access to the courts be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That Plaintiff's remaining constitutional claims be **DISMISSED without prejudice** as improperly joined and for failure to exhaust administrative remedies.

3. That Plaintiff's motion for injunctive relief (ECF No. 30) be **DENIED as moot**.

4. The clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this <u>1st</u> day of August 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**